**JENNY L. FOLEY, Ph.D., ESQ.**
Nevada Bar No. 9017
E-mail: jfoley@hkm.com
**REX M. MARTINEZ, ESQ.**
Nevada Bar No. 15277
E-mail: rmartinez@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-8340
E-mail: jfoley@hkm.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| GEORGE PACIOCCO, an Individual, | CASE NO.: |
| Plaintiff, | |
| vs. | **COMPLAINT AND JURY DEMAND** |
| ST. MORITZ SECURITY SERVICES, INC., a Foreign Corporation. | |
| Defendants. | |

The Plaintiff GEORGE PACIOCCO ("**Mr. Paciocco**" or "**Plaintiff**") by and through his attorneys, Jenny L. Foley, Ph.D., Esq. and Rex M. Martinez, Esq., of HKM Employment Attorneys LLP, hereby complain and allege as follows:

## JURISDICTION

1. This is an action for damages brought by Plaintiff for unlawful workplace retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*; Retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S. Code § 12203; and for certain claims brought pursuant to the Nevada Revised Statutes as outlined below.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C.

§2000e-5(f)(3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. § 1367.

3. All material allegations contained in this Complaint are believed to have occurred in Clark County, Nevada. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDY

4. On or about November 17, 2020, Plaintiff initiated the process of filing a Charge of Retaliation against his employer, the Defendant named in this action with the Nevada Equal Rights Commission ("NERC") wherein he alleged retaliation.

5. On or about November 23, 2020, Plaintiff received his Notice of Right to Sue from the NERC.

6. This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

7. Plaintiff has exhausted his administrative remedy on all claims pled hereunder prior to filing this action with this Court.

## GENERAL ALLEGATIONS

8. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

9. Plaintiff is a United States citizen and current resident of Clark County, Nevada.

10. Defendant ST. MORITZ SECURITY SERVICES, INC. (hereinafter "**St. Moritz**" or "**Defendant**") is a foreign corporation and an employer in the State of Nevada.

11. At all times relevant to this matter, Defendant had over 500 employees, and is therefore subject to the provisions of Title VII.

12. Plaintiff first began his employment with Defendant on or about November 1, 2019, as a General Manager after Defendant had bought out a previous security company.

13. Upon information and belief, on or about December 2019, Mathew Schwartz, CEO, Chris Hansen, COO, and Mark Hall, HOA Expert, came to Las Vegas to visit the HOA Estates at Seven Hills ("Seven Hills"), which was a prestigious and coveted security contract

1  belonging to Defendant.

2  14. Upon information and belief, residents of Seven Hills were pushing for their
3  HOA to accept bids for other security companies.

4  15. Upon information and belief, after Mr. Schwartz, Mr. Hansen, and Mr. Hall
5  finished visiting Seven Hills, they returned to Plaintiff's office where he was called into the
6  conference room by Mr. Hansen, with the others in attendance.

7  16. Upon information and belief, Mr. Schwartz sat silently while Mr. Hansen began
8  berating Plaintiff on "how he [Plaintiff] could allow Estates at Seven Hills" to "look" the way
9  it does.

10  17. Upon information and belief, Mr. Hansen questioned Plaintiff as how he could,
11  as a General Manager, condone and allow the majority of his Security Staff in the three Guard
12  Houses as well as the Officer in Charge to be African American, or as he put it, "have no
13  diversity."

14  18. Upon information and belief, Mr. Hansen was livid at Plaintiff as he believed
15  that the reason some residents of Seven Hills were pushing the HOA Board to bid for other
16  security companies was because the guards were African American.

17  19. Upon information and belief, Plaintiff replied back to Mr. Hansen that the
18  "color" of the guards was not the reason some residents wanted entertain bids from other
19  security companies.

20  20. Upon information and belief, Plaintiff explained that the reality was that some
21  vocal residents had a friend that owned another security company, and this is what was causing
22  the residents to want to change security companies, not because of the guards were African
23  American.

24  21. Upon information and belief, Plaintiff's explanation only further angered Mr.
25  Hansen who, while shouting, asked Plaintiff if he knew who the Officer in Charge, which he
26  specifically asked because she was an African American female who suffered from a physical
27  disability.

28  22. Upon information and belief, Plaintiff said he of course knew who the Officer

in Charge was, which then prompted Mr. Hansen to shout that the officer in charge was also an African American who Mr. Hansen referred to as "handicapped."

23. Upon information and belief, Mr. Hansen then asked how Plaintiff could "allow" a handicap person to be the Officer in Charge.

24. Upon information and belief, Plaintiff again replied to Mr. Hansen that he of course knew that she had a disability, but that it did not matter because she was the most intelligent and capable Security Officer he had at Sevens Hills.

25. Upon information and belief, Plaintiff further explained that her physical "handicap" of walking with a "limp" did not in any way affect her job performance because as Officer in Charge she was driving a patrol vehicle for her entire shift.

26. Upon information and belief, Plaintiff's reply only angered Mr. Hansen more, to the point of him giving Plaintiff an "ultimatum."

27. Upon information and belief, Plaintiff was threatened that in 30 days Mr. Hansen would return and make drastic changes if needed if situation was not "fixed."

28. Upon information and belief, Mr. Hansen was implying that to "fix" the situation Plaintiff should replace the African American employees with Caucasian employees.

29. Upon information and belief, Plaintiff was also removed from any and all involvement from Seven Hills, where he would previously, as General Manager, attend and participate in monthly HOA Board Meetings and Monthly Security meetings with the Seven Hills security liaison and property manager.

30. Upon information and belief, Mr. Hansen finally excused Plaintiff from the berating, and Plaintiff left the conference room stunned and shocked not only because of what he had just heard and been told to do, but also because the others, including the CEO, sat back in agreement.

31. Upon information and belief, Plaintiff learned that Mr. Hall, the HOA Expert during the Seven Hills visit, had insulted the African American female Officer in Charge who Mr. Hansen had berated Plaintiff over.

32. Upon information and belief, Mr. Hall said to the Officer in Charge, "I see you

1 have a hitch in your giddy up, how long have you walked that way?"

2     33.    Upon information and belief, the Officer in Charge replied that she was born
3 that way, which prompted Mr. Hall to make another belittling comment that embarrassed the
4 Officer in Charge enough to make her walk away.

5     34.    Upon information and belief, when Plaintiff learned of Mr. Hall's conduct,
6 which was so egregious that it spread through the office quickly, he discussed his concerns with
7 the then Chief Office Administrator.

8     35.    Upon information and belief, a few weeks later, during the first week of January
9 2020, Plaintiff was contacted by Mr. Schwartz, CEO.

10     36.    Upon information and belief, Mr. Schwartz wanted Plaintiff to host a job fair
11 specifically to hire "diversified" security guards for Seven Hills, to which Plaintiff took, as
12 intended, to mean to hire Caucasian security guards.

13     37.    Upon information and belief, Plaintiff again explained to Mr. Schwartz that the
14 color of our guards' skin was not a problem.

15     38.    Upon information and belief, Plaintiff was instructed to host a job fair at a hotel
16 off the bus route because it would require an applicant to have their own vehicle, which to Mr.
17 Schwartz's thinking was because "white" applicants would more be likely to own a vehicle than
18 minorities.

19     39.    Upon information and belief, despite Plaintiff's protests, Plaintiff selected a
20 hotel off the bus route as instructed and booked the job fair for January 13, 2020.

21     40.    Upon information and belief, Mr. Schwartz had someone else create the job fair
22 advertisement and place it in various publications, including the Las Vegas Craigslist section.

23     41.    Upon information and belief, Mr. Schwartz told Plaintiff that he was publishing
24 a "higher" starting hourly wage in hopes to attract "white" applicants.

25     42.    Upon information and belief, the Craigslist ad was posted on a Friday January
26 10, 2020, and did in fact have a starting wage of $12.00 an hour, which was $1.00 an hour more
27 than the current African American guards at Seven Hills were starting at.

28     43.    Upon information and belief, some of the current Seven Hill guards read the

craigslist post and saw the higher starter wages, which negatively affected morale.

44. Upon information and belief, Plaintiff communicated this issue to Mr. Schwartz, who after thinking about it, instructed Plaintiff to tell the on-site manager to tell any guards who questioned the higher starting wages that Defendant was "looking for guards with higher qualifications, and thus warranted higher starting pay".

45. Upon information and belief, Plaintiff knew that this was false, as the real reason was to attract non-African American applicants.

46. Upon information and belief, the job fair occurred on Monday January 13, 2020, but it was a total disaster with only a total of three applicants, resulting in a complete failure to attract non-African American applicants, as was Defendant's goal.

47. Upon information and belief, approximately two weeks later, Mr. Schwartz and Mr. Hansen returned to Las Vegas.

48. Upon information and belief, on January 29, 2020, Mr. Hansen called Plaintiff into the conference room, but Mr. Schwartz left, leaving only Plaintiff and Mr. Hansen in the conference room.

49. Upon information and belief, Mr. Hansen told Plaintiff that he was being immediately terminated.

50. Upon information and belief, the reason Plaintiff was given for his termination was that his position was being eliminated.

51. Upon information and belief, Plaintiff did not have any reprimands against him and was an exemplary employee during his tenure while working for Defendant.

52. Upon information and belief, Plaintiff believes he was terminated for failing to hire Caucasian employees and for reporting such discrimination.

### FIRST CAUSE OF ACTION

**(Retaliation under Federal Law, 42 U.S.C.  § 2000e-3 and State Law, NRS 613.340)**

53. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

54. In violation of 42 U.S.C § 200e-3, Defendant retaliated against Plaintiff after he

complained of acts which he reasonably believed were discriminatory.

55. In violation of NRS 613.340 Defendant retaliated against Plaintiff after he complained of acts, which he reasonably believed were discriminatory.

56. There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff.

57. Plaintiff was instructed by corporate executives to replace the African American employees with Caucasian employees, to which Plaintiff reported.

58. When Plaintiff protested against Defendant's discriminatory instructions and conduct, he was retaliated against by being removed from any and all work relating to Seven Hills.

59. Plaintiff also reported that there was a morale problem because Defendant's employees had noticed the increased rate of pay that was meant to attract Caucasian candidates rather than minorities.

60. After reporting Defendant's conduct and Plaintiff failing to carry out their discriminatory policies, Plaintiff was terminated.

61. The actions and conduct by Defendant constitute illegal retaliation which is prohibited by federal and state statutes.

62. Plaintiff suffered damages in an amount deemed sufficient by the jury.

63. Plaintiff is entitled to an award of reasonable attorney's fees.

64. Defendant is guilty of oppression, fraud or malice, express or implied because Defendant knowingly and intentionally retaliated against Plaintiff for protesting against and reporting their blatant discriminatory conduct.

65. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

///

///

///

## SECOND CAUSE OF ACTION

**(Retaliation under the Americans with Disabilities Act, 42 U.S. Code § 12203)**

66. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

67. In violation of 42 U.S.C § 12203, Defendant retaliated against Plaintiff after he complained of acts which he reasonably believed were discriminatory.

68. There may be more detrimental acts of which Plaintiff is unaware which may also constitute retaliation in that it harmed Plaintiff.

69. Plaintiff was instructed not only that he should replace his African American employees with Caucasian ones, but also that his employees that have disabilities should be replaced.

70. Defendant constantly berated Plaintiff as to how he could allow a person with a disability to be the Officer in Charge.

71. Plaintiff explained that the Officer in Charge was more than capable of fulfilling her job responsibilities and that her disability did not affect her abilities.

72. Defendant insulted the Officer in Charge and when Plaintiff reported this interaction, Defendant retaliated against him by removing him from all Seven Hills work and then subsequently terminating Plaintiff.

73. The actions and conduct by Defendant constitute illegal retaliation which is prohibited by federal statutes.

74. Plaintiff suffered damages in an amount deemed sufficient by the jury.

75. Plaintiff is entitled to an award of reasonable attorney's fees.

76. Defendant is guilty of oppression, fraud or malice, express or implied because Defendant knowingly and intentionally retaliated against Plaintiff for protesting against and reporting their blatant discriminatory conduct.

77. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendant in an amount deemed sufficient by the jury.

## THIRD CAUSE OF ACTION

### (Intentional/Negligent Infliction of Emotional Distress)

78. Plaintiff incorporates all of the allegations in the preceding paragraphs as though fully set forth herein.

79. Defendant's conduct toward Plaintiff was extreme and outrageous and caused significant emotional harm, headaches, sleeplessness and various physical and mental distress.

80. Defendant's conduct was extreme, outrageous, and undertaken with either intent or reckless disregard for causing Plaintiff emotional distress.

81. Defendant had a duty to refrain from engaging in discriminatory, hostile and retaliatory acts as described above.

82. Defendant breached that duty.

83. Defendant's intentional or negligent conduct was the legal, actual, proximate cause of Plaintiff's extreme and/or severe emotional distress by engaging in the conduct described herein.

84. Defendants must pay damages in an amount to be determined at trial but exceeding $25,000 for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life because they engaged in illegal actions.

85. Because Defendants are guilty of oppression, fraud or malice, express or implied, Defendants must pay Plaintiff an additional amount for the sake of example and by way of punishment.

86. Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred as a result of these violations and therefore, she is entitled to recover reasonable attorney's fees against Defendants.

**WHEREFORE,** Plaintiff prays this court for:

    a. A jury trial on all appropriate claims;

moreover, to enter judgment in favor of the Plaintiff by:

    b. Awarding Plaintiff an amount sufficient to fully compensate his (including tax consequences) for all economic losses of any kind, and otherwise make his

whole in accordance with Title VII, the ADA, and certain claims brought pursuant to the Nevada Revised Statutes;

    c.   General damages;

    d.   Special damages;

    e.   An award of compensatory and punitive damages to be determined at trial;

    f.   An award of attorney's fees and costs; and

    g.   Any other relief the court deems just and proper.

Dated on this 17th Day of February 2020.

**HKM EMPLOYMENT ATTORNEYS, LLP**

*/s/ Jenny L. Foley*
**JENNY L. FOLEY, Ph.D., Esq.**
Nevada Bar No. 9017
**REX M. MARTINEZ, Esq.**
Nevada Bar No. 15277
1785 East Sahara, Suite 300
Las Vegas, Nevada 89104
Tel: (702) 805-8340
Fax: (702) 805-3893
E-mail: jfoley@hkm.com
*Attorneys for Plaintiff*